1  MORGAN, LEWIS & BOCKIUS LLP
   Mortimer H. Hartwell, Bar No. 154556
2  mhartwell@morganlewis.com
   Jeremy N. Lateiner, Bar No. 238472
3  jlateiner@morganlewis.com
   Lyndsey C. Heaton, Bar No. 262883
4  lheaton@morganlewis.com
   One Market, Spear Street Tower
5  San Francisco, CA  94105-1126
   Tel:    +1.415.442.1000
6  Fax:    +1.415.442.1001

7  Attorneys for Defendant
   AliphCom dba Jawbone
8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11

12  ROBERT FRENZEL, individually and on      Case No. 3:14-cv-03587-WHO
    behalf of all others similarly situated,
13                                            **DEFENDANT ALIPHCOM DBA**
                   Plaintiff,                 **JAWBONE'S NOTICE OF MOTION**
14                                            **AND MOTION TO DISMISS**
            vs.                               **PLAINTIFF'S COMPLAINT;**
15                                            **MEMORANDUM OF POINTS AND**
    ALIPHCOM d/b/a JAWBONE,                   **AUTHORITIES IN SUPPORT**
16                                            **THEREOF**
                   Defendant.
17                                            Date:       December 10, 2014
                                              Time:       2:00 p.m.
18                                            Judge:      Hon. William H. Orrick
                                              Dept.:      Courtroom 2, 17th Floor
19                                            Date of Filing:    August 7, 2014

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

## NOTICE OF MOTION AND MOTION

**TO ROBERT FRENZEL AND TO HIS COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on December 10, 2014, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 in the San Francisco Courthouse of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue in San Francisco, California, Defendant AliphCom dba Jawbone ("Jawbone"), will, and hereby does, move this Court to dismiss the putative class action complaint ("Complaint") brought by Plaintiff Robert Frenzel ("Plaintiff") in its entirety and each and every cause of action therein on the following grounds:

Pursuant to Federal Rule of Civil Procedure 12(b)(6), JPMC moves this Court to dismiss the Complaint in its entirety because Plaintiff has failed to allege facts sufficient to state any claim upon which relief can be granted.  Alternatively, JPMC requests that the Court strike Plaintiff's class allegations from the Complaint.  *See* Fed. R. Civ. P. 12(f); Fed. R. Civ. P. 23(d)(1)(D).

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, any matters upon which judicial notice may be taken, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND BRIEF STATEMENT OF ISSUES TO BE DECIDED ............ 1

II.  STATEMENT OF RELEVANT ALLEGED FACTS ........................................................ 3

     A.   History of the Jawbone UP and UP24 ...................................................................... 3

     B.   Limited Warranty for the Jawbone UP and UP24 .................................................. 4

     C.   Plaintiff's Experience with the Second Generation Jawbone UP. ......................... 5

III. LEGAL STANDARD ................................................................................................... 6

IV.  ARGUMENT .............................................................................................................. 7

     A.   Plaintiff's Claims Under California Law Should Be Dismissed Because He
          Does Not Allege That He Purchased His Jawbone UP In California And
          The Proposed Class Is Not Limited To Individuals Who Purchased The
          Product In California. ............................................................................................. 7

     B.   Plaintiff's CLRA, UCL and FAL Claims Should be Dismissed.......................... 10

          1.   Plaintiff Fails to Plead His CLRA, UCL and FAL Claims With
               Particularity. ............................................................................................... 10

          2.   Plaintiff Has Not Alleged an Actionable Misrepresentation.................... 11

          3.   Plaintiff Has Not Alleged Sufficient Facts to Establish a Fraudulent
               Omission. ..................................................................................................... 14

     C.   Plaintiff's Express Warranty Claim Should Be Dismissed................................. 17

     D.   Plaintiff's Implied Warranty Claims Should Also Be Dismissed....................... 18

     E.   Plaintiff Lacks Standing to Sue for Injunctive Relief. ....................................... 21

     F.   Plaintiff's Request For Damages Under The CLRA Should Be Dismissed
          As To The Jawbone UP24 And The First Generation Of The Jawbone UP,
          Neither Of Which He Purchased. .......................................................................... 21

     G.   The Complaint's Class Definition is Grossly Overbroad and Should Be
          Stricken. ................................................................................................................... 22

V.   CONCLUSION ........................................................................................................ 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1

**TABLE OF AUTHORITIES**

2

**Page**(s)

3

**CASES**

4

*Ang v. Bimbo Bakeries USA, Inc.,*
   No. 13-cv-01196-WHO, 2014 WL 1024182 (N.D.Cal. March 13, 2014) .............................. 23

5

6

*Ang v. Bimbo Bakeries USA, Inc.,*
   No. 13-cv-1196-WHO, 2013 WL 5407039 (N.D.Cal. Sept. 25, 2013) ................................. 22

7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................................ 7, 11

8

9

*Baba v. Hewlett-Packard Co.,*
   No. C 09-05946 RS, 2011 WL 317650 (N.D.Cal. Jan. 28, 2011) ......................................... 16

10

11

*Baltazar v. Apple, Inc.,*
   No. CV-10-3231-JF, 2011 WL 588209 (N.D.Cal. Feb. 10, 2011) ......................................... 16

12

*Banks v. Nissan North America, Inc.,*
   No. C 11-2022 PJH, 2012 WL 8969415 (N.D.Cal. March 20, 2012)...................................... 9

13

14

*Barabino v. Dan Gamel, Inc.,*
   No. 2:04–cv–2359–MCE–PAN, 2006 WL 2083257 (E.D.Cal. July 25, 2006)...................... 18

15

16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................ 6, 11

17

18

*Berenblat v. Apple, Inc.,*
   Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297 (N.D.Cal. Apr. 9,
   2010) ................................................................................................................................... 16

19

20

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.,*
   685 F.Supp.2d 1094 (E.D.Cal. 2010).................................................................................... 17

21

22

*Cattie v. Wal-Mart Stores, Inc.,*
   504 F.Supp.2d 939 (S.D.Cal. 2007) ...................................................................................... 22

23

*Clark v. LG Electronics U.S.A., Inc.,*
   No. 12-cv-485 JM (JMA), 2013 WL 5816410 (S.D.Cal. Oct. 29, 2013) .............................. 20

24

25

*Clemens v. DaimlerChrysler Corp.,*
   534 F.3d 1017 (9th Cir. 2008)............................................................................................... 20

26

*Daugherty v. Am. Honda Motor Co.,*
   144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (Ct. App. 2006) ............................................... 17

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Donohue v. Apple, Inc.*,
  871 F.Supp.2d 913 (N.D.Cal. 2012) .................................................................. 15

*Elias v. Hewlett-Packard Co.*,
  903 F.Supp.2d 843 (2012).................................................................................. 11

*Ferranti v. Hewlett-Packard Co.*,
  No. 5:13-cv-03847-EJD, 2014 WL 4647962 (N.D.Cal. Sep. 16, 2014)............... 20

*Frezza v. Google, Inc.*,
  No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D.Cal. April 22, 2013) ........................ 8, 9

*Galitski v. Samsung Telecommunications America, LLC*,
  No. 3:12-CV-4782-D, 2013 WL 6330645 (N.D.Tex. Dec. 5, 2013)..................... 20

*Gest v. Bradbury*,
  443 F.3d 1177 (9th Cir. 2006)............................................................................ 21

*Granfield v. NVIDIA Corp.*,
  No. C 11-05403 JW, 2012 WL 2847575 (N.D.Cal. July 11, 2012)................... 10, 23

*Herron v. Best Buy Co. Inc.*,
  924 F.Supp.2d 1161 (E.D.Cal. 2013) ................................................................... 6

*Herron v. Best Buy Stores, L.P.*,
  No. 12-cv-02103-GEB-JFM, 2014 WL 2462969 (E.D.Cal. May 29, 2014) .................. 21, 22

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999)............................................................................ 21

*Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*,
  No. 3:11-CV-01576-H-RBB, 2012 WL 2861160 (S.D.Cal. Feb. 13, 2012) ........................... 9

*Hovsepian v. Apple, Inc.*,
  No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)........................... 22, 24

*In re iPhone 4S Consumer Litigation*,
  No. C 12-1127 CW, 2013 WL 3829653 (N.D.Cal. July 23, 2013)....................... 11

*In re MyFord Touch Consumer Litigation*,
  No. C-13-3072 EMC, 2014 WL 2451291 (May 30, 2014)........................... 12, 13, 14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)............................................................................ 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kent v. Hewlett-Packard Co.*,
No. 09-5341 JF (PVT), 2010 WL 2681767 (N.D.Cal. July 6, 2010)................................. 18, 21

*Littlehale v. Hain Celestial Group, Inc.*,
No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) ........................................ 8, 9

*Long v. Graco Children's Products Inc.*,
No. 13-cv-01257-WHO, 2013 WL 4655763 (N.D.Cal. Aug. 26, 2013) .......................... 15, 20

*Long v. Hewlett-Packard Co.*,
No. C 06-02816 JW, 2007 WL 2994812 (N.D.Cal. July 27, 2007).................................. 11, 18

*Maloney v. Verizon Internet Services, Inc.*,
413 Fed.Appx. 997 (9th Cir. 2011) ........................................................................................ 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008).............................................................................................. 6

*Mazza v. American Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012)....................................................................................... passim

*Minkler v. Apple, Inc.*,
No. 5:13-cv-05332-EJD, 2014 WL 4100613 (N.D.Cal. August 20, 2014) ........................... 19

*Morgan v. Harmonix Music Systems, Inc.*,
No. C08-5211 BZ, 2009 WL 2031765 (N.D.Cal. July 7, 2009)...................................... 12, 17

*Morgan v. Wallaby Yogurt Company, Inc.*,
No. 13-cv-00296-WHO, 2014 WL 1017879 (N.D.Cal. March 13, 2014) ............................. 21

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993)................................................................................................... 23

*Oestreicher v. Alienware Corp.*,
544 F.Supp.2d 964 (N.D. Cal. 2008) .................................................................................... 6

*Outboard Marine Corp. v. Superior Court*,
52 Cal.App.3d 30 (1975)...................................................................................................... 22

*People v. Forest E. Olson, Inc.*,
137 Cal.App.3d 137 (1982).................................................................................................. 17

*Plumlee v. Pfizer, Inc.*,
No. 13-CV-00414-LHK, 2014 WL 4275519 (N.D.Cal. Aug. 29, 2014) ............................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Rasmussen v. Apple, Inc.*,
  No. C-13-4923 EMC, 2014 WL 1047091 (N.D.Cal. March 14, 2014) ........................... 11, 24

*Rikos v. Procter v. Gamble Co.*,
  No. 1:11-cv-226, 2012 WL 641946 (S.D.Ohio Feb. 28, 2012) ................................. 7

*Sanders v. Apple Inc.*,
  672 F.Supp.2d 978 (N.D. Cal. 2009) ............................................................... 23, 24

*Segemen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985)........................................................................... 10

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)........................................................................... 7

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)........................................................................... 10

*Tietsworth v. Sears, Roebuck & Co.*,
  720 F.Supp.2d 1123 (N.D. Cal. 2010) ............................................................... 23

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009)........................................................................... 23

*Waller v. Hewlett-Packard Co.*,
  No. 11cv0454-LAB (RBB), 2011 WL 6325972 (S.D.Cal. Dec. 16, 2011) ........................... 22

*Wang v. OCZ Technology Group, Inc.*,
  276 F.R.D. 618 (N.D.Cal. Oct. 14, 2011) ....................................................... 11, 21

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (2012)............................................................................... 15, 16

**STATUTES**

Cal. Civ. Code
  § 1782(a) ............................................................................................... 21
  § 1782(c) ............................................................................................... 24
  §§ 1792, 1792.1 ....................................................................................... 18

Cal. Comm. Code
  § 2316................................................................................................... 18
  § 2316(2) ............................................................................................... 19
  § 2719(1)(a)........................................................................................... 19
  § 2719(1)(b) ........................................................................................... 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Uniform Commercial Code
    § 2-316 ................................................................................................................................. 18

**RULES AND REGULATIONS**

Fed. R. Civ. P.
    9(b) ............................................................................................................... 2, 10, 11, 23
    12(b)(6) ........................................................................................................................ 6
    12(f)............................................................................................................................. 22
    23(d)(1)(D) .................................................................................................................. 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1     **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.**      **INTRODUCTION AND BRIEF STATEMENT OF ISSUES TO BE DECIDED**

3        Plaintiff Robert Frenzel ("Plaintiff") has filed a sweeping nationwide class action,

4 bringing claims against Defendant AliphCom dba Jawbone ("Jawbone") for alleged violations of

5 California consumer protection and warranty law.  Plaintiff is a Missouri resident who purchased

6 a second generation Jawbone UP in November 2012.  Jawbone UP are electronic wristbands (also

7 referred to as bands) designed and marketed by Jawbone that track the user's movement and sleep

8 patterns.  The bands are powered through a rechargeable battery contained within the device.

9 They are accompanied by a One-Year Limited Manufacturer's Warranty (the "Limited

10 Warranty").

11        The bulk of the allegations of Plaintiff's Complaint center around one chief complaint:

12 that his second generation Jawbone UP band did not function properly after several months, and

13 therefore *any statements* concerning its features are necessarily false and misleading, even

14 statements about features of *other* generations of the Jawbone UP that Plaintiff did not purchase

15 and never saw.  But this overreaching style of pleading falls way short of the mark needed to state

16 valid claims against Jawbone here.

17        Several months after his purchase, Plaintiff alleges his band stopped maintaining its

18 charge properly.  Plaintiff reported the problem to Jawbone and, after some troubleshooting, he

19 was issued a replacement band under the Limited Warranty.  Sometime later, Plaintiff contacted

20 Jawbone to report that his replacement band had "died" and demanded another replacement.

21 Jawbone declined to issue another replacement (because all of the applicable warranties had

22 expired), and so informed Plaintiff.

23        Plaintiff is clearly dissatisfied with the Limited Warranty and has brought a lawsuit

24 seeking to compel Jawbone to give full refunds to anyone in the United States who has ever

25 bought his version of the Jawbone UP, or any other version of the product.  But Plaintiff does not

26 even allege, nor could he, that Jawbone failed to lived up to its obligations under the Limited

27 Warranty.  Jawbone also did not mislead Plaintiff about the quality or reliability of his Jawbone

28 UP, which is evident given that Plaintiff is unable to identify any representation <u>actually made</u> by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

Jawbone on that topic in the Complaint.  In fact, the Limited Warranty expressly states: "Jawbone DOES NOT WARRANT THAT THE PRODUCT IS ERROR FREE OR THAT IT WILL FUNCTION WITHOUT INTERRUPTION."  Jawbone's Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), Ex. 1 (Limited Warranty).

Plaintiff's claims should be dismissed for at least the following reasons:

*First*, Plaintiff's consumer protection claims should be governed by the law of the jurisdiction where he bought his Jawbone UP, which he has not identified as California, and a nationwide class action seeking to apply California law to purchases made anywhere in the United States is inappropriate.  *See Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).

*Second*, Plaintiff fails to meet the threshold pleading standard of Fed. R. Civ. P. 9(b) because he has not pled with particularity what representations Jawbone made about the quality and reliability of the Jawbone UP that were false or misleading, when and where he reviewed those representations, and which ones he relied on in making his purchasing decision.

*Third*, of those representations that Plaintiff has identified in the Complaint, none are actionable under the California Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL") or False Advertising Law ("FAL") because they are either generalized statements about product functions or features, or are not really alleged to be false.  In fact, Plaintiff's principal claim – that he was somehow "misled" by claims about the number of days that the battery on the second generation Jawbone UP would last on a full charge – does not comport with his actual complaint, *i.e.*, that the product simply does not work at all after some period of time.

*Fourth*, Plaintiff has not sufficiently alleged a duty for Jawbone to disclose facts about the purported defects in the Jawbone UP to Plaintiff or the putative class.  Specifically, Plaintiff has not alleged that Jawbone failed to disclose facts that are contrary to a representation "actually made" by Jawbone about the quality or reliability of the Jawbone UP, or that Jawbone omitted facts about a purported defect that poses a safety issue, one of which is required for an omission to be actionable under the CLRA, UCL or FAL.  In addition, Plaintiff alleges no facts that demonstrate Jawbone had knowledge of the purported defect in the second generation of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

Jawbone UP at the time of *his purchase*, which according to his Complaint was soon after the second generation was launched.

*Fifth*, Jawbone complied with its obligations under the Limited Warranty by appropriately providing Plaintiff with a replacement band after he reported problems during the warranty period.  That replacement is Plaintiff's sole remedy for the problems he experienced with his band, and the disclaimers and limitations of remedies set forth in the Limited Warranty are effective and permissible under the California Commercial Code.

*Sixth*, Plaintiff has not shown a likelihood that he would buy another Jawbone UP and therefore he lacks standing to sue for injunctive relief.

*Seventh*, Plaintiff's pre-lawsuit notice under the CLRA only identified the Jawbone UP he purchased.  Since Plaintiff failed to give the requisite notice under the CLRA as to allegedly "similar" products that he did not purchase, he may not claim damages for those products under the CLRA.

*Eighth*, Plaintiff's class definition is grossly overbroad – it includes products he did not purchase (the first generation of the Jawbone UP and the Jawbone UP24) as well as those for which Jawbone provided purchasers a "No Questions Asked" refund policy.  A purchaser of the second generation product, such as Plaintiff, cannot represent the interests of purchasers who bought dissimilar products, especially those for which Jawbone offered a full refund years ago.

For the foregoing reasons, and as discussed in detail below, Jawbone's motion to dismiss should be granted in its entirety.

## II.   STATEMENT OF RELEVANT ALLEGED FACTS

### A.   History of the Jawbone UP and UP24

Jawbone is a consumer technology company with its headquarters in San Francisco, California.  Dkt. No. 1 ("Complaint"), ¶¶ 8, 13.  Jawbone designs and markets the Jawbone UP, a wristband containing a motion sensor that tracks the user's movement and sleep patterns.  *Id.*, ¶¶ 2, 14-16.  Information tracked by the band is accessible to users when the band is "synced" by physically attaching it to their computer or smart phone.  *Id.*, ¶¶ 2, 14, 17, 20-21.

The Jawbone UP is powered by a rechargeable battery contained within the device.  *Id.*, 3,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

20, 22.  The packaging of Plaintiff's Jawbone UP, as well as other marketing materials published by Jawbone, states that the band has a "[b]attery life [of] up to **10 days**" on a full charge.  *Id.*, ¶ 16 (emphasis in original); *see id.*, ¶¶ 41, 78; RJN, Ex. 6.

Jawbone launched the first generation of the Jawbone UP in 2011.  Complaint, ¶¶ 2, 14.  Within months of the launch, Jawbone issued a letter, dated December 2011, stating that it had "found an issue with two specific capacitors in the power system that affects the ability to hold a charge in some of our bands," which was "purely performance related and [did] not pose any safety risk."  *Id.*, ¶¶ 6, 30-31; RJN, Ex. 3 (CEO Letter).  The letter recognized that the first generation of the Jawbone UP had "not yet lived up to everyone's expectations," and therefore offered a full refund or replacement to all purchasers of the first generation of the product.  Complaint, ¶¶ 30-32; RJN, Ex. 3.  The letter further stated that Jawbone had "temporarily paused production of UP bands and will begin taking new orders once these issues have been sorted out."  RJN, Ex. 3.

In 2012, Jawbone released the second generation of the Jawbone UP.  Complaint, ¶¶ 14, 33.  At that time, Jawbone represented that the "power defects" it had identified in the first generation of the Jawbone UP had been fixed.  *Id.*, ¶¶ 6, 33.

In 2013, Jawbone released the Jawbone UP24.  *Id.*, ¶¶ 14, 38.  The Jawbone UP24 has "features not available" in the Jawbone UP such as the ability to sync to computers and phones wirelessly, as opposed to physically attaching it to the device.  *Id.*, ¶¶ 14,  38.  Jawbone represented in marketing materials, but not on the packaging, that the Jawbone UP24 has a "[b]attery life [of] up to 7 days" on a full charge.  *Id.*, ¶¶ 23, 78; *see* RJN, Ex. 8.

The second generation Jawbone UP is the only generation of the product that had information about battery life on the packaging.  *See* Complaint, ¶ 16; RJN, Ex. 6; *cf* RJN, Exs. 5, 7, 8.  The first generation of the Jawbone UP and the Jawbone UP24 did not have information about battery life on the packaging.  RJN, Exs. 5, 8.  Even as to the second generation Jawbone UP, information about battery life was only on the packaging until the release of the Jawbone UP24 in 2013, when the packaging for the second generation was redesigned.  *Id.*, Ex. 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

**B.     Limited Warranty for the Jawbone UP and UP24**

Jawbone issues a one-year Limited Warranty that accompanies each Jawbone UP and UP24, and an additional three month warranty on any replacement band issued under the Limited Warranty.  Complaint, ¶¶ 14, 28, 29, 39, n. 1; RJN, Ex. 1.  Plaintiff was expressly informed of the Limited Warranty through the statement "1 Year Limited Manufacturer's Warranty" on the outer packaging of his Jawbone UP.  *See* Complaint, ¶¶ 15-16; RJN, Exs. 4, 6.  The Limited Warranty is available on Jawbone's website (https://jawbone.com/legal/warranty), and provides in pertinent part:

> AliphCom ("Jawbone") warrants to you, the original retail purchaser ("Consumer"), that this product ("Product") will under normal use operate substantially in accordance with the accompanying documentation for a period of one (1) year from date of original purchase. Consumer's sole and exclusive remedy, and Jawbone's sole and exclusive responsibility under this warranty will be, at Jawbone's option, either to repair or replace the defective Product during the one (1) year limited warranty period so that it performs substantially in accordance with the accompanying documentation on the date of your initial purchase.

RJN, Ex. 1.

The Limited Warranty expressly states: "Jawbone DOES NOT WARRANT THAT THE PRODUCT IS ERROR FREE OR THAT IT WILL FUNCTION WITHOUT INTERRUPTION." *Id.*  It also disclaims all other warranties, whether express or implied, including specifically the implied warranties of merchantability and fitness for a particular purpose, to the extent possible under applicable law.  *Id.*

**C.     Plaintiff's Experience with the Second Generation Jawbone UP.**

Plaintiff is a resident of Kansas City, Missouri, who purchased a second generation Jawbone UP at an unidentified Apple store in November 2012.  Complaint, ¶¶ 7, 41; Declaration of Robert Frenzel attached to the Complaint ("Frenzel Complaint Declaration"), Dkt. No. 1 at p. 37 of 40, ¶ 3.  Plaintiff reviewed the label and other "marketing materials and representations" at some point prior to the purchase, which included representations that "Jawbone UP is a fitness and lifestyle tracker that monitors the purchaser's physical activity, sleep patterns, and eating

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1  habits, and the battery is expected to last for 10 days when fully charged."[1]  Complaint, ¶ 41;

2  Frenzel Complaint Declaration, ¶ 3.

3       Plaintiff used his Jawbone UP as instructed, but "[w]ithin a few months … the battery

4  stopped maintaining its charge."  Complaint, ¶ 41.  Plaintiff thereafter contacted Jawbone's

5  Customer Care and went through the standard troubleshooting procedure.  *Id.*  Jawbone ultimately

6  issued Plaintiff a replacement band, which itself was accompanied by a three-month warranty.

7  *Id.*, ¶¶ 14, 41.

8       At some point, Plaintiff also experienced "power problems" with his replacement band

9  and it eventually "died," *i.e.*, it "failed to turn on entirely."  *Id.*, ¶ 42.  Plaintiff again contacted

10  Jawbone's Customer Care, but was informed that they would be unable to assist him and that they

11  would not issue another replacement band.  *Id.*  Plaintiff was also advised by Jawbone that he

12  should purchase a new Jawbone UP.  *Id.*  Plaintiff does not allege *when* he contacted Jawbone's

13  Customer Care about problems he experienced with his replacement band, and he likewise does

14  not allege that it was still under any warranty at that time.

15  **III.  LEGAL STANDARD**

16       A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) should be

17  granted when a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on

18  its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court may consider "the

19  pleadings, exhibits attached to the complaint, and matter properly subject to judicial notice."

20  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal

21  quotes omitted).

22       Dismissal may be based "on the lack of a cognizable legal theory or the absence of

23

24  [1] The packaging for Plaintiff's second generation Jawbone UP states: "Battery life up to **10 days**."  Complaint, ¶ 16 (bold in original, underline added); RJN, Ex. 6.  Plaintiff has not

25  identified with any specificity any other representation wherein Jawbone stated that the battery in the Jawbone UP or UP24 would last a certain number of days without the qualifier "up to."  *See*

26  *Herron v. Best Buy Co. Inc.*, 924 F.Supp.2d 1161, 1171-73 (E.D.Cal. 2013) (discussing the significance of the qualifier "up to" under the CLRA, UCL and FAL); *see also Maloney v.*

27  *Verizon Internet Services, Inc.*, 413 Fed.Appx. 997, 999 (9th Cir. 2011) ("A reasonable consumer would not have been deceived by Defendants' statements, which included the qualifier 'up to,'"

28  among other qualifications).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1    sufficient facts alleged under a cognizable legal theory." *Oestreicher v. Alienware Corp.*, 544

2    F.Supp.2d 964, 967-68 (N.D. Cal. 2008) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

3    699 (9th Cir. 1988)).  While allegations of material fact are assumed to be true, the court "need

4    not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

5    unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

6    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

7    statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).  "[W]here the well-

8    pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

9    complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*

10   **IV.    ARGUMENT**

11            **A.    Plaintiff's Claims Under California Law Should Be Dismissed Because He
                      Does Not Allege That He Purchased His Jawbone UP In California And The
12                    Proposed Class Is Not Limited To Individuals Who Purchased The Product
                      In California.**
13

14            Plaintiff is seeking to bring a nationwide class action under California law, specifically

15   California's CLRA, UCL and FAL.[2]  However, "California law may only be used on a classwide

16   basis if 'the interests of other states are not found to outweigh California's interest in having its

17   law applied.'"  *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal.4th

18   906, 921 (2001)).  A three-step governmental interest test is applied to determine whether the

19   interests of other states outweigh California's interest:

20                   First, the court determines whether the relevant law of each of the
                     potentially affected jurisdictions with regard to the particular issue
21                   in question is the same or different.

22                   Second, if there is a difference, the court examines each
                     jurisdiction's interest in the application of its own law under the
23                   circumstances of the particular case to determine whether a true
                     conflict exists.
24

25   [2] Plaintiff is vague about what law he is seeking to be applied to his other claims, *i.e.*, his express
     and implied warranty claims.  As to those claims, he only refers to the Uniform Commercial Code
26   ("UCC") and not to any particular state's adopted version of the UCC.  *See e.g.*, Complaint, ¶ 84.
     Assuming Plaintiff is seeking to apply California warranty law on a nationwide basis, those
27   claims should likewise be dismissed.  *See Rikos v. Procter v. Gamble Co.*, No. 1:11-cv-226, 2012
     WL 641946, at *507 (S.D.Ohio Feb. 28, 2012) (applying California law and striking a nationwide
28   class of claims under California express warranty law).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81-82 (2010)).

In *Mazza*, the plaintiffs brought a putative nationwide class action against Honda asserting claims under the CLRA, UCL and FAL based on alleged misrepresentations and failures to disclose material facts in marketing materials about the braking system in certain Honda-manufactured vehicles. *Id.* at 587. The named plaintiffs had purchased their vehicles in Florida and Maryland, respectively. *Id.* The defendant was American Honda Motor Company, Inc., a California corporation with its headquarters in California, and the marketing materials at issue were alleged to have emanated from Honda's offices in California. *Id.* at 598 (D.W. Nelson, J., dissenting).

In deciding whether to apply California law in *Mazza*, the Ninth Circuit first recognized that there are material differences between the CLRA, UCL and FAL, and the laws of other jurisdictions across the country.[3] *Id.* at 587, 591. The Ninth Circuit also found that a nationwide consumer class action against a product manufacturer, such as in this case, "squarely implicate[s]" "[e]ach of our states … interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them," as well as each state's interest in being able to assure businesses operating in the state that the state's limitation of liability laws

---

[3] For example, the CLRA and UCL have no scienter requirement whereas the laws of Colorado, New Jersey and Pennsylvania do. *Id.* at 591. In addition, the CLRA, UCL and FAL require named class plaintiffs to demonstrate reliance while the laws of Florida, New Jersey and New York do not. *Id.* There are also material differences in the remedies available under CLRA, UCL and FAL as compared to, for example, Michigan and New Jersey. *Id.*; *see Frezza v. Google, Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *6 (N.D.Cal. April 22, 2013) (material difference in remedies available under California and Pennsylvania law); *Littlehale v. Hain Celestial Group, Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *2 (N.D. Cal. July 2, 2012) (material difference in remedies available under California and North Carolina law). Moreover, Louisiana, Georgia, Mississippi, Kentucky, Virginia and Alabama prohibit class actions that allege unfair trade practices altogether under state law. *Mazza*, 666 F.3d at 597-98 (D.W. Nelson, J., dissenting).

will be available in the event they are faced with litigation in the future.  *Id.* at 592-93 (quoting *McCann*, 48 Cal.4th at 97-98).  Finally, the Ninth Circuit found that "foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state." *Id.* at 594.  Conversely, the Ninth Circuit found that "California's interest in applying its law to residents of foreign states is attenuated" even though the defendant in *Mazza* was, like here, a California corporation, headquartered in California, whose advertisements emanated from California. *Id.* (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)).  Based on these findings, the Ninth Circuit held in *Mazza* that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.*

Our case presents no material distinctions with *Mazza*.  Both cases involve plaintiffs asserting nationwide class claims under the CLRA, UCL and FAL based on marketing materials that emanated from California by a defendant, product-manufacturer headquartered in California, but the marketing materials were reviewed and relied on by non-California plaintiffs outside California, and the products that were purchased outside California. *Id.*  Accordingly, this Court should likewise like find that each putative class member's claims should be governed by the consumer protection laws of the jurisdiction where they purchased a Jawbone UP.  Given that Plaintiff has not alleged that he purchased his Jawbone UP in California, his claims under the CLRA, UCL and FAL should be dismissed. *See* Complaint, ¶ 41.

Jawbone anticipates Plaintiff may argue that it is premature to apply the choice-of-law principles articulated in *Mazza* prior to class certification. To the contrary, "fact discovery is [not] required to confirm material difference in the laws between state laws," and "the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss." *Frezza*, 2013 WL 1736788, at *6-7; *see Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 WL 2861160, at *3 (S.D.Cal. Feb. 13, 2012) (granting motion to dismiss CLRA, UCL and Song-Beverly Act claims of out-of-state plaintiffs under *Mazza*); *Littlehale*, 2012 WL 5458400, at *2 (granting motion to dismiss CLRA, UCL and fraud claims of out-of-state plaintiff under *Mazza*); *Banks v. Nissan North America, Inc.*, No. C

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

11-2022 PJH, 2012 WL 8969415, at *1 (N.D.Cal. March 20, 2012) (granting motion to dismiss nationwide class claims under the CLRA and UCL under *Mazza*); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *3 (N.D.Cal. July 11, 2012) (granting motion to dismiss CLRA and UCL claims of out-of-state plaintiff under *Mazza*).

**B.      Plaintiff's CLRA, UCL and FAL Claims Should be Dismissed.**

**1.      Plaintiff Fails to Plead His CLRA, UCL and FAL Claims With Particularity.**

In the 35-page Complaint, only two paragraphs (41 and 42) attempt to set forth details about what *Plaintiff* reviewed and allegedly relied upon in making his purchase of a Jawbone UP. Specifically, Plaintiff states that he purchased the product in November 2012 from an Apple store and prior to the purchase, he reviewed "Defendant's marketing materials and representations." Complaint, ¶ 41.  Similarly, the one-page declaration attached to the Complaint states that Plaintiff "review[ed] the label and representations made by Defendants [sic] regarding Jawbone UP" before making the purchase.  *See* Frenzel Complaint Declaration, ¶ 3.  In terms of the substance of the representations that Plaintiff reviewed, all the Complaint alleges is that they "included that Jawbone UP is a fitness and lifestyle tracker that monitors the purchaser's physical activity, sleep patterns, and eating habits, and the battery is expected to last for 10 days when fully charged."  Complaint, ¶ 41.

Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  These allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend the charge and not just deny that they have done anything wrong."  *Segemen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, the allegations must set forth "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  Rule 9(b)'s heightening pleading requirement applies to all claims sounding in fraud including claims made under the CLRA, UCL and FAL.  *See Kearns v. Ford*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

*Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 4275519, at *6 n. 4 (N.D.Cal. Aug. 29, 2014).

Plaintiff does not identify what particular marketing materials or other representations he reviewed (besides the "label"), where he reviewed them (for example, on Jawbone's website or at the Apple store), when he reviewed them (except for the general time period before he purchased the product), and which particular representations he found material and relied on of all the representations he reviewed.  In fact, Plaintiff incredulously alleges that he relied on *everything* he reviewed.  *See* Frenzel Complaint Declaration, ¶ 3 ("The marketing of the product and representations on the label were substantial factors influencing my decision to purchase Jawbone UP.").  Only by identifying the particular facts on which Plaintiff's CLRA, UCL and FAL claims are based does he state a plausible claim under *Twombly* and *Iqbal*, and meet the threshold pleading standard of Rule 9(b).  *See Wang v. OCZ Technology Group, Inc.*, 276 F.R.D. 618, 627-28 (N.D.Cal. Oct. 14, 2011) (dismissing CLRA, UCL and FAL claims where plaintiff failed to allege with specificity which representations he reviewed, found material, and relied on, and when he did so); *see also In re iPhone 4S Consumer Litigation*, No. C 12-1127 CW, 2013 WL 3829653, at *12 (N.D.Cal. July 23, 2013) (dismissing CLRA, UCL and FAL claims where the plaintiffs failed to "specify particular commercials, presentations or portions of the website" they were exposed to and relied on in purchasing their devices).

### 2.    Plaintiff Has Not Alleged an Actionable Misrepresentation.

"The standard for [the CLRA, UCL and FAL] is the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue.  As a result, courts often analyze these three statutes together." *Elias v. Hewlett-Packard Co.*, 903 F.Supp.2d 843, 854 (2012) (citations omitted).  "Generalized, vague, and unspecified assertions constitute 'mere puffery' on which a reasonable consumer could not rely," and are therefore not actionable under the CLRA, UCL or FAL.  *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *7 (N.D.Cal. July 27, 2007).  "[A] representation of fact, as opposed to mere puffery, is one which makes a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

fact.'" *Rasmussen v. Apple, Inc.*, No. C-13-4923 EMC, 2014 WL 1047091, at *9 (N.D.Cal. March 14, 2014) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)).

Plaintiff contends that Jawbone violated the CLRA, UCL and FAL in two ways: (1) "by representing that the device would accurately record movement and sleep patterns when the power defect prevents Jawbone UP from working at all;" and (2) "by misrepresenting that the First and Second Generation Jawbone UP batteries would retain its charge for 10 days when fully charged, and Jawbone UP24 would retain its charge for 7 days after being fully charged." Complaint, ¶ 56; *see id.*, ¶¶ 63-65, 71. Neither of these alleged representations is actionable, nor are they really alleged to be false.

As to the first representation about the general functions of the Jawbone UP, a product manufacturer's generalized statements in advertisements or other marketing materials about product functions or features are not actionable as affirmative misrepresentations simply because an alleged defect causes the product to die or not work properly. "[U]nless a product manufacturer makes claims about, *e.g.*, a product's quality or reliability, no claim based on an affirmative misrepresentation is viable." *In re MyFord Touch Consumer Litigation*, No. C-13-3072 EMC, 2014 WL 2451291, at *5 (May 30, 2014).

In *Morgan v. Harmonix Music Systems, Inc.*, No. C08-5211 BZ, 2009 WL 2031765, at *1 (N.D.Cal. July 7, 2009), the plaintiffs alleged that drum pedals sold as part of a video game called Rock Band were defective and broke within months of purchase, and asserted claims under the CLRA and UCL. The plaintiffs were unable, however, to identify any particular false representations that the defendants had made about the drum pedals. *Id.* at *3. Instead, the plaintiffs' position was that "any statement made by defendants that the Rock Band game could be played with drums was false because for certain customers, the pedal eventually failed." *Id.* The court rejected this argument and dismissed the plaintiffs' claim, finding that "California courts require more than 'vague statements' about a product to form the basis of an actionable CLRA misrepresentation claim." *Id.*

A similar argument was rejected in *In re MyFord Touch Consumer Litigation*. There, the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

plaintiffs argued that advertising and other marketing materials about the MyFord Touch (MFT)

"infotainment system" in certain Ford-manufactured vehicles were false because problems with

the MFT system in some vehicles caused it not to work.  *In re MyFord Touch Consumer*

*Litigation*, 2014 WL 2451291, at *4.  The court found such statements to be not actionable:

> Plaintiffs are not really arguing that the MFT system does not have
> the features described in, *e.g.,* Ford's advertisements … **Rather,
> their beef is that the features of the MFT system do not work
> (and that Ford knew that fact at the time of the sales/leases to
> Plaintiffs but failed to disclose such)**. This is not a case where,
> *e.g.,* Ford made an affirmative representation that the MFT system
> was defect free. **In fact, the opposite is true given the limited
> warranty, which expressly states that the warranty does not
> mean that each Ford vehicle is defect free.**

*Id.* at *5 (emphasis added).

As in *MyFord Touch*, Plaintiff is not really arguing that the Jawbone UP does not have the

features described on the label or in marketing materials.  Plaintiff does not dispute in the

Complaint that his Jawbone UP, when it was working properly in the first "few months,"

accurately recorded his movement and sleep patterns (or, for that matter, that it maintained a

charge for around 10 days).  *See* Complaint, ¶ 41.  Rather, Plaintiff's "beef" is really that the

original product eventually stopped maintaining its charge properly after several months and the

replacement band eventually "died," apparently after the warranty expired.[4]  *Id.*, ¶¶ 41-42.

As for Jawbone's representations about how long the Jawbone UP would last on a full

charge, *i.e.,* up to 7 days for the Jawbone UP24 and up to 10 days for the Jawbone UP, the fatal

flaw in the Complaint is that Plaintiff does not allege any facts that demonstrate these

representations are false or misleading.  There are no allegations at all in the Complaint about

how long Plaintiff's Jawbone UP lasted on a full charge.  For example, Plaintiff is not claiming

that his band ***never*** lasted near ten days.  Rather, Plaintiff's claim is that, regardless of how long

---

[4] Plaintiff does not allege in the Complaint when exactly he contacted Jawbone about the
problems he was experiencing with his replacement band.  Although not to be considered by the
Court at this stage of the proceedings, it is noteworthy that, according to Jawbone's records, the
replacement band was issued in August 2013, within the one-year warranty period.  Plaintiff does
not appear to have contacted Jawbone about problems he was experiencing with his replacement
band again until May 2014, long after the expiration of the one-year warranty on his original band
and the three month warranty on his replacement band.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1  the product can retain a charge when it is new, it eventually cannot maintain a change for any

2  number of days because it "dies."  *Id.*, ¶ 19 ("It goes without saying that when the product simply

3  dies, it can neither record data or be synced with the Jawbone app.").

4       Plaintiff is unable to identify any representation by Jawbone that the product will work

5  perfectly for some period of time, that it has no defects or that it will not "die."  Conversely, in its

6  Limited Warranty, which is referenced on the packaging that Plaintiff allegedly reviewed and

7  relied on (Frenzel Complaint Declaration, ¶ 3), and is available on Jawbone's website, Jawbone

8  represented: "Jawbone DOES NOT WARRANT THAT THE PRODUCT IS ERROR FREE OR

9  THAT IT WILL FUNCTION WITHOUT INTERRUPTION."  RJN, Ex. 1; *see MyFord Touch*,

10  2014 WL 2451291 at *5.

11       **3.      Plaintiff Has Not Alleged Sufficient Facts to Establish a Fraudulent
              Omission.**

12

13       Plaintiff's theory for liability under the CLRA, UCL and FAL appears to be solely that

14  Jawbone made affirmative *misrepresentations* about the Jawbone UP, which, as discussed above,

15  has no merit.  Nowhere in the Complaint does Plaintiff allege that Jawbone violated the CLRA,

16  UCL or FAL by making an omission.  Nevertheless, the allegations in the Complaint do not

17  support a fraudulent omission claim either.

18       This Court recently summarized the applicable standard for analyzing an alleged

19  fraudulent omission of a product defect as follows:

20       A defendant "is not liable for a fraudulent omission concerning a
         latent defect under the CLRA, unless the omission is 'contrary to a
21       representation actually made by the defendant, or an omission of a
         fact the defendant was obliged to disclose.'"  [*Wilson v. Hewlett-*
22       *Packard Co.*, 668 F.3d 1136, 1141 (2012)] (citing *Daugherty v. Am.
         *Honda Motor Co.*, 144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (Ct.
23       App. 2006)).  Citing *Daugherty v. American Honda Motor
         Company*, the Ninth Circuit said, "A manufacturer's duty to
24       consumers is limited to its warranty obligations absent either an
         affirmative misrepresentation or a safety issue." *Id.* Thus, a
25       complaint must plead with particularity "factual allegations
         showing any instance of physical injury or any safety concerns
26       posed by the defect." *Daugherty*, 51 Cal. Rptr. 3d at 127 (Ct. App.
         2006). Also, a plaintiff "must sufficiently allege that a defendant
27       was aware of a defect at the time of sale to survive a motion to
         dismiss," *Wilson*, 668 F.3d at 1145, though "allegations of fraud
28       based on information and belief [] may be relaxed with respect to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

matters within the opposing party's knowledge" so long as they "state the factual basis for the belief," [*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)]. A plaintiff can also survive a motion to dismiss if he plausibly pleads that the defendant "should have known" about the defect. *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 U.S. Dist. LEXIS 89379, 2011 U.S. Dist. LEXIS 89379, at *18-19 (N.D. Cal. August 10, 2011).

*See Long v. Graco Children's Products Inc.*, No. 13-cv-01257-WHO, 2013 WL 4655763, at *6 (N.D.Cal. Aug. 26, 2013).

As discussed above, Plaintiff has not adequately pled an omission that is contrary to a representation "actually made" by Jawbone about the Jawbone UP. Plaintiff does not allege that Jawbone represented the Jawbone UP to be defect-free or that it will not "die." *Cf.* RJN, Ex. 1 ("Jawbone DOES NOT WARRANT THAT THE PRODUCT IS ERROR FREE"). Likewise, Plaintiff does not allege that the purported defect that causes the product to "die" poses a safety issue. Absent such allegations, Plaintiff cannot state a claim for a fraudulent omission under the CLRA, UCL or FAL.

In addition, Plaintiff has not adequately alleged that Jawbone had knowledge of the purported defect at the time of his purchase. "In order to give rise to a duty to disclose, a complaint must contain specific allegations demonstrating the manufacturer's knowledge of the alleged defect *at the time of sale*." *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 927 (N.D.Cal. 2012) (emphasis in the original); *Wilson*, 668 F.3d at 1145-46.

The window within which Plaintiff must establish Jawbone had knowledge of the purported defects in the *second generation* of the Jawbone UP is quite small. Plaintiff alleges that in December 2011, Jawbone's CEO published a letter acknowledging "an issue with two specific capacitors in the power system [in the *first generation* of the Jawbone UP] that affects the ability to hold a charge in some of our bands." Complaint, ¶¶ 6, 30-33; RJN, Ex. 3. It goes on to state: "We've temporarily paused production of UP bands and will begin taking new orders once these issues have been sorted out." RJN, Ex. 3.

Plaintiff purchased a *second generation* Jawbone UP in November 2012 after they "rolled off the assembly line in 2012." Complaint, ¶¶ 33, 41. Jawbone represented that the defects in the first generation had been fixed in the second generation. *Id.*, ¶ 33. Accordingly, to establish that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

Jawbone had knowledge of the purported defect in Plaintiff's band at the time of his purchase, Plaintiff must allege specific facts demonstrating that Jawbone knew or should have known by November 2012 that the changes made in the *second generation* of the Jawbone UP did <u>not</u> fix the defects identified in the first generation.  No such facts are alleged in the Complaint.

Plaintiff speculates that "pre-market tests show[ed] the defects with Jawbone UP's power supply and battery."  *Id.*, ¶ 64; *see id.* ¶ 56.  This is pure speculation, which is obvious given that Plaintiff also alleges "alternatively, Defendant[] fail[ed] to test Jawbone UP before releasing it on the market."  *Id.*, ¶ 64.  Plaintiff does not identify what tests were performed or how such tests could have caused Jawbone to learn of the purported defect in the second generation by November 2012.  Absent <u>specific</u> facts about the purported defect and the alleged pre-market testing, Plaintiff cannot state a claim for a fraudulent omission.  *See Wilson*, 668 F.3d at 1147 ("The allegation that HP, as the manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted HP to the defect."); *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *4 (N.D.Cal. Feb. 10, 2011) (rejecting claim that "Apple must have known through its product testing about the alleged defects or shortcomings of the iPad prior to commencing its promotional campaign.").

Finally, the articles and website postings referenced in the Complaint are likewise unavailing to show that Jawbone knew or should have known of the purported defect at the time of Plaintiff's purchase.  In order to be relevant to the analysis, such articles and postings must be dated *prior* to Plaintiff's purchase.[5]  *See Wilson*, 668 F.3d at 1148 (dismissing CLRA and UCL claims where consumer complaints referenced in the complaint were either undated or dated after the plaintiffs' purchases).  Here, only a fraction of the articles and postings referenced in the

---

[5] Even if Plaintiff could allege facts demonstrating that the Jawbone received some consumer complaints about the *second generation* of the Jawbone UP by the time of Plaintiff's purchase, that alone is not enough to survive a motion to dismiss.  *See Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D.Cal. Jan. 28, 2011) ("Awareness of a few customer complaints … does not establish knowledge of an alleged defect."); *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297, at *9 (N.D.Cal. Apr. 9, 2010) (without more, consumer complaints "merely establish the fact that some consumers were complaining").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1  Complaint are dated and, of those, none are dated prior to Plaintiff's purchase.  *See* Complaint, ¶¶

2  33, 34, 36-40.  This is insufficient to adequately demonstrate Jawbone's alleged knowledge of the

3  purported defects in the second generation Jawbone UP at the time of Plaintiff's purchase and

4  therefore Plaintiff has not stated a plausible claim for an actionable omission under the CRLA,

5  UCL or FAL.[6]

6    **C.    Plaintiff's Express Warranty Claim Should Be Dismissed.**

7    Plaintiff asserts that representations made by Jawbone in its advertising and other

8  marketing materials relating to the Jawbone UP and UP24 constitute an express warranty that

9  Jawbone breached.  *See* Complaint, ¶¶ 77-81.  Plaintiff recognizes, however, that the products

10  were sold with a Limited Warranty.  *See id.*, ¶¶ 14, 28, 29, 39, n. 1.  That Limited Warranty

11  expressly <u>disclaims</u> all other express warranties:

12    THE LIMITED WARRANTY SET FORTH ABOVE IS
      PROVIDED IN LIEU OF ALL OTHER WARRANTIES AND
13    **Jawbone HEREBY DISCLAIMS ALL OTHER
      WARRANTIES OF ANY KIND**, WHETHER EXPRESS,
14    IMPLIED, STATUTORY OR OTHERWISE, INCLUDING
      WITHOUT LIMITATION ANY WARRANTIES OF
15    MERCHANTABILITY, FITNESS FOR A PARTICULAR USE
      OR PURPOSE, NON-INFRINGEMENT, QUALITY AND TITLE.
16

17  RJN, Ex. 1 (emphasis added).

18  _____

19  [6] Plaintiff's failure to allege an affirmative misrepresentation or fraudulent omission is fatal to his
    theory that all three prongs of the UCL have been violated.  *See* Complaint, ¶¶ 63-65.  Plaintiff
20  does not state a viable claim under the "unlawful" prong because he fails to allege facts showing
    that Jawbone violated the CLRA, FAL or any warranty.  *See Daugherty*, 144 Cal.App.4th at 837.
21  Additionally, the alleged breach of an express warranty—a contract—is not "unlawful" for
    purposes of the UCL. *See Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1110
22  (E.D.Cal. 2010) (citing *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal.App.4th 638, 645
    (2008)) ("A breach of contract . . . is not in itself an unlawful act for purposes of the UCL."). The
23  alleged conduct also fails under the "fraudulent" prong of the UCL because there was no
    actionable misrepresentation or fraudulent omission.  *Morgan v. Harmonix*, 2009 WL 2031765, at
24  *5. Plaintiff's allegations also do not amount to a violation of the "unfair" prong because there
    was no actionable misrepresentation, and nondisclosure of a fact that a defendant was not bound
25  to disclose does not result in a "substantial injury." *See Daugherty*, 144 Cal.App.4th at 838-39;
    *Morgan v. Harmonix*, 2009 WL 2031765, at *5.  Finally, Plaintiff's FAL claim fails for this same
26  reasons and his UCL claim, and for the additional reason that Plaintiff has failed to allege
    sufficient facts to establish scienter.  *See People v. Forest E. Olson, Inc.*, 137 Cal.App.3d 137,
27  139-40 (1982); Complaint, ¶¶ 68-74.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1    Plaintiff does not identify what jurisdiction's law he is seeking to apply to his express

2 warranty claims.  Under California law, a manufacturer may properly disclaim express warranties

3 made in advertisements and other marketing materials.  *See* Cal. Com. Code § 2316 (adopting

4 UCC § 2-316, which permits disclaimers of express warranties); *Long v. Hewlett-Packard*, 2007

5 WL 2994812, at *5-7 (finding that HP's Limited Warranty validly disclaimed any express

6 warranties contained in advertisements and marketing materials); *Kent v. Hewlett-Packard Co.*,

7 No. 09-5341 JF (PVT), 2010 WL 2681767, at *6 n. 4 (N.D.Cal. July 6, 2010) (same).

8    Further, "[a manufacturer] is not liable for breach of express warranty merely because a

9 product manifests recurring failures during the warranty period.  Rather, the question is whether

10 Plaintiffs sought repairs, refunds, or replacements and, if so, whether [the manufacturer]

11 responded appropriately under the warranty."  *Kent v. Hewlett-Packard*, 2010 WL 2681767, at

12 *6.  Here, Plaintiff was given a replacement band after he reported problems with his original

13 band, *see* Complaint, ¶ 41, and he does not allege that he requested that the replacement band be

14 repaired or replaced during the warranty period.  *See* RJN, Ex. 1 ("Consumer's sole and exclusive

15 remedy, and Jawbone's sole and exclusive responsibility under this warranty will be, at

16 Jawbone's option, either to repair or replace the defective Product during the one (1) year limited

17 warranty period ….").  As such, there are no facts alleged demonstrating that Jawbone failed to

18 respond appropriately under the Limited Warranty and therefore Plaintiff's express warranty

19 claim must be dismissed.

20    **D.**    **Plaintiff's Implied Warranty Claims Should Also Be Dismissed.**

21    Plaintiff purports to assert an implied warranty of merchantability claim under the UCC,

22 but does not identify any particular jurisdiction's version of the UCC as applicable.[7]  Plaintiff

23 likewise does not identify any law to apply to his implied warranty of fitness for a particular

24 purpose claim.  Jawbone presumes Plaintiff seeks to apply the California Commercial Code to

25 ───────────────

26 [7] Plaintiff does not assert a claim under California's Song-Beverly Act, which regulates
warranties for consumer goods.  The Song-Beverly Act does not apply here because Plaintiff did
27 not purchase his Jawbone UP in California.  *See* Cal. Civ. Code §§ 1792, 1792.1 (providing for
implied warranties of merchantability and fitness for a particular purpose for "consumer goods
28 that are sold at retail *in this state*") (italics added); *Barabino v. Dan Gamel, Inc.*, No. 2:04–cv–
2359–MCE–PAN, 2006 WL 2083257, at *3 (E.D.Cal. July 25, 2006).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

both of his implied warranty claims.

The Limited Warranty effectively disclaimed the implied warranties that Plaintiff claims were breached.  California Commercial Code section 2316(2) provides, in pertinent part:

> Subject to subdivision (3) [inapplicable here], to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

Here, the packaging for Plaintiff's Jawbone UP, which Plaintiff reviewed (Frenzel Complaint Declaration, ¶ 3), states: "1 Year Limited Manufacturer's Warranty."  RJN, Exs. 4, 6. These words are printed in similar typeface size as the representation about battery life on which Plaintiff alleges he relied.  *See* Frenzel Complaint Declaration, ¶ 3.  The Limited Warranty, which is readily available on Jawbone's website, states in pertinent part: "Jawbone HEREBY DISCLAIMS ALL OTHER WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR USE OR PURPOSE, NON-INFRINGEMENT, QUALITY AND TITLE."  RJN, Ex. 1.

Given that the Limited Warranty specifically disclaimed the implied warranties of merchantability and fitness for a particular purpose, and did so conspicuously in all capital letters, there can be no question that the disclaimer was effective under the California Commercial Code. *See Minkler v. Apple, Inc.*, No. 5:13-cv-05332-EJD, 2014 WL 4100613, at *5 (N.D.Cal. August 20, 2014) ("Apple's Hardware Warranty disclaimed all implied warranties in accordance with California law because it stated in clear language and capitalized formatting that Apple 'disclaims all statutory and implied warranties, including without limitation, warranties of merchantability and fitness for a particular purpose and warranties against hidden or latent defects.' … The disclaimer is in writing, conspicuous, and mentions merchantability.").

The Limited Warranty also effectively limited Plaintiff's remedy in the event of a breach. Under the California Commercial Code, if a remedy "is expressly agreed to be exclusive … it is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

the sole remedy." Cal. Com. Code § 2719(1)(b); *see* Cal. Com. Code § 2719(1)(a) ("The agreement may … limit or alter the measure of damages recoverable under this division, as by limiting the buyer's remedies to … repair and replacement of nonconforming goods or parts"). Here, the Limited Warranty provides: "Consumer's ***sole and exclusive remedy***, and Jawbone's sole and exclusive responsibility under this warranty will be, at Jawbone's option, either to repair or replace the defective Product during the one (1) year limited warranty period so that it performs substantially in accordance with the accompanying documentation on the date of your initial purchase." RJN, Ex. 1 (emphasis added).

Plaintiff alleges that Jawbone replaced his original Jawbone UP, but refused to replace *the replacement* or provide him with a refund. *See* Complaint, ¶¶ 41, 42. Plaintiff does not allege *when* he gave Jawbone an opportunity to repair or replace his replacement band, and presumably he would have pled it was within the warranty period if that were true. Absent an allegation that Plaintiff gave Jawbone an opportunity to repair or replace his replacement band during the warranty period, his breach of implied warranty claims must be dismissed.[8] *See Galitski v. Samsung Telecommunications America, LLC*, No. 3:12-CV-4782-D, 2013 WL 6330645, at *9 (N.D.Tex. Dec. 5, 2013) (applying the California Commercial Code and finding "because plaintiffs do not plausibly allege that, upon being given the opportunity, Samsung failed to repair or replace their defective phones – the only remedies available under the terms of Samsung's warranty – plaintiffs' UCC implied warranty claim is dismissed."); *Ferranti v. Hewlett-Packard Co.*, No. 5:13-cv-03847-EJD, 2014 WL 4647962, at *6 (N.D.Cal. Sep. 16, 2014) ("The fact that Plaintiff did receive replacement printers and were able to get assistance from Tech Support

---

[8] Even absent the terms of the Limited Warranty, Plaintiff still cannot state an implied warranty claim because the California Commercial Code requires vertical privity, meaning the plaintiff and defendant "are in adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *cf. Clark v. LG Electronics U.S.A., Inc.*, No. 12-cv-485 JM (JMA), 2013 WL 5816410, at *10 (S.D.Cal. Oct. 29, 2013) (vertical privity not required under the Song-Beverly Act). Here, Plaintiff admits he purchased the Jawbone UP from an Apple store, not from Jawbone. *See* Complaint, ¶ 41. Moreover, no exception to the vertical privity requirement applies here. Plaintiff does not allege that he is an employee of Apple and, as discussed above, he fails to allege any written labels or advertisements on which he reasonably relied. *See Long v. Graco*, 2013 WL 4655763, at *12.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1   indicates that HP did comply with its warranty.").

2       Finally, Plaintiff has not alleged in the Complaint that he used the Jawbone UP for

3   anything other than its ordinary purpose.  Therefore, he has not stated a claim for a breach of an

4   implied warranty for a particular purpose.  *See Kent*, 2010 WL 2681767, at *5.

5       **E.      Plaintiff Lacks Standing to Sue for Injunctive Relief.**

6       Plaintiff does not allege that he would likely purchase another Jawbone UP.  In fact,

7   Plaintiff alleges that Jawbone's "customer support advised him that he should *purchase* a new

8   Jawbone UP" after his replacement band allegedly died.  Complaint, ¶ 42 (emphasis in original).

9   Plaintiff apparently did not do so, and it is evident from the Complaint that Plaintiff is so

10  dissatisfied with his prior Jawbone UP experience that he would not buy another one.

11      In order to have standing to sue for injunctive relief, a plaintiff must show a "likelihood of

12  future injury."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999).  This requires

13  a showing that the plaintiff is "'realistically threatened by a *repetition* of the violation.'"  *Gest v.

14  Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860-

15  61 (9th Cir. 2001) (emphasis in original)).  "Allegations that a defendant's continuing conduct

16  subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are

17  themselves unable to demonstrate a likelihood of future injury."  *Wang*, 276 F.R.D. at 626; *see*

18  *Morgan v. Wallaby Yogurt Company, Inc.*, No. 13-cv-00296-WHO, 2014 WL 1017879, at *6

19  (N.D.Cal. March 13, 2014).

20      As it is appears *unlikely* Plaintiff would be injured again by Jawbone's alleged

21  misconduct, Plaintiff lacks standing to assert a claim for injunctive relief.

22      **F.      Plaintiff's Request For Damages Under The CLRA Should Be Dismissed As
23              To The Jawbone UP24 And The First Generation Of The Jawbone UP,
              Neither Of Which He Purchased.**

24      In order to seek damages under the CLRA, a plaintiff must send the defendant a written

25  notice (commonly known as a "CLRA notice") 30 days or more before filing a lawsuit, which,

26  among other things, identifies *all* of the products for which the plaintiff intends to seek damages

27  in the lawsuit.  *See* Cal. Civ. Code § 1782(a); *Herron v. Best Buy Stores, L.P.*, No. 12-cv-02103-

28  GEB-JFM, 2014 WL 2462969, at *2 (E.D.Cal. May 29, 2014).  "The purpose of the notice

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1   requirement … is to give the manufacturer or vendor sufficient notice of alleged defects to permit

2   appropriate corrections or replacements," and this "purpose may only be accomplished by a literal

3   application of the notice provisions." *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d

4   30, 40-41 (1975).  If a plaintiff later seeks damages in a lawsuit for "Substantially Similar

5   Products" that were not identified in the CLRA notice, the request for damages as to those

6   products must be dismissed.  *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196-WHO, 2013

7   WL 5407039, at *12 (N.D.Cal. Sept. 25, 2013); *Herron*, 2014 WL 2462969, at *2.

8          Here, Plaintiff's CLRA notice, which is attached as Exhibit A to the Complaint, makes no

9   reference whatsoever to the Jawbone UP24 or the first generation Jawbone UP.  *See* Complaint,

10   Ex. A.  Rather, it refers only to the "Jawbone UP" and states: "Mr. Frenzel purchased Jawbone

11   UP."  *Id.*  Jawbone therefore was only given notice as to the Jawbone UP that Plaintiff purchased,

12   *i.e.*, the second generation.  As such, Plaintiff's request for damages under the CLRA as to the

13   first generation Jawbone UP as well as the Jawbone UP24 should be dismissed *with prejudice*.

14   *See Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939, 950 (S.D.Cal. 2007) ("failure to give

15   notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives

16   notice and amends"); *Waller v. Hewlett-Packard Co.*, No. 11cv0454-LAB (RBB), 2011 WL

17   6325972, at *5-6 (S.D.Cal. Dec. 16, 2011) (same).

18          **G.      The Complaint's Class Definition is Grossly Overbroad and Should Be
               Stricken.**
19

20          Plaintiff seeks to represent "all persons who purchased Jawbone UP for personal use,

21   excluding those who purchased Jawbone UP for resale."  Complaint, ¶ 44.  This includes

22   purchasers of the first generation of the Jawbone UP, who were offered full refunds, and

23   purchasers of the Jawbone UP24, which has different features and a different battery life than

24   previous generations of the Jawbone UP.  Plaintiff never purchased the first generation of the

25   Jawbone UP or the Jawbone UP24, yet he seeks to make claims on behalf of *all* of those

26   purchasers.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

Plaintiff's class definition is grossly overbroad, and should be stricken[9], for at least the following reasons:

First, Plaintiff lacks standing to bring claims based on the first generation of the Jawbone UP and the Jawbone UP24, neither of which he purchased, because he fails to allege facts demonstrating a substantially similarity in the purported defects and alleged representations about the products. *See Granfield v. NVIDIA Corp.,* No. 11–05403, 2012 WL 2847575, at *6 (N.D.Cal. July 11, 2012) ("when a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing"); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 WL 1024182, at *8 (N.D.Cal. March 13, 2014) ("where the actual composition or appearance of the product is legally significant to the claims at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance").

As to the purported defects, Plaintiff alleges that Jawbone represented that the first generation of the Jawbone UP contained a problem with two specific capacitors that affected its ability to hold a charge, and that problem was addressed in the second generation of the Jawbone UP.  Complaint, ¶ 6.  Plaintiff also admits that the design of the Jawbone UP changed again from the second generation to the UP24 in that it was modified such that it "has features not available in the previous model, including the ability to sync to computers and smart devices wirelessly." *Id.*, ¶ 14.  As such, the Jawbone UP24 lasts "up to 7 days" whereas the Jawbone UP lasts "up to 10 days." *Id.*, ¶ 78.  In light of these allegations, Plaintiff's conclusory statement that "all three Jawbone UP generations suffer from identical power defects" is woefully inadequate. *See*

---

[9] This Court has authority to strike or dismiss Plaintiff's class allegations at any time pursuant to either Rule 12(f) or Rule 23(d)(1)(D).  *See Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, *2 (N.D. Cal. Dec. 17, 2009) (granting defendant's motion to strike class claims pursuant to Rule 12(f) and Rule 23(d)(1)(D)).  Where, as here, a complaint demonstrates that a class action cannot be maintained on the facts alleged and no amount of class discovery would alter this conclusion, a defendant may properly move to strike class allegations at the pleading stage.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-42 (9th Cir. 2009); *Tietsworth v. Sears, Roebuck & Co.*, 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010) (courts may "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained"); *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 990-91 (N.D. Cal. 2009) (striking class claims at pleading stage).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO

1    *Neubronner*, 6 F.3d at 672; Fed. R. Civ. P. 9(b).

2          With regards to appearance, Plaintiff alleges that he relied on the representation on the

3    label of *his* second generation of the Jawbone UP that it is has "[b]attery life [of] up to **10 days**."

4    Complaint, ¶ 16; Frenzel Complaint Declaration, ¶ 3.  Yet, Plaintiff he does <u>not</u> allege that similar

5    representations were made on the packaging of *all* second generation Jawbone UP products.  Nor

6    does he allege that *any* representations about battery life, not to mention similar representations,

7    were made on the packaging of the Jawbone UP24 and first generation Jawbone UP.  Absent such

8    facts, which cannot be truthfully alleged here, Plaintiff lacks standing to bring claims based on

9    products he did not purchase.

10          Second, the proposed class improperly includes class members who (a) never experienced

11   any defects with their Jawbone UP; (b) experienced the alleged defect after the warranty period;

12   and (c) did not see or were not deceived by the labeling or advertising at issue before purchasing

13   the product.  *See Rasmussen*, 2014 WL 1047091, at *12; *Hovsepian v. Apple, Inc.*, No. 08-5788

14   JF (PVT), 2009 WL 5069144 (N.D.Cal. Dec. 17, 2009); *Sanders*, 672 F.Supp.2d at 990.

15          Third, the proposed class improperly includes warranty claims.  Individual issues with

16   respect to reliance predominate in warranty claims and therefore are inappropriate for class

17   treatment.  *See Sanders*, 672 F.Supp.2d at 990 ("Courts routinely hold that fraud and warranty

18   claims are difficult to maintain on a nationwide basis and are rarely certified.").

19          Fourth, the Complaint demonstrates that Jawbone instituted a program wherein it offered a

20   refund or replacement band to all purchasers of the first generation of the Jawbone UP.

21   Complaint, ¶¶ 30-32; RJN, Ex. 3.  Those individuals obviously cannot be class members.  *See*

22   Cal. Civ. Code § 1782(c).

23   **V.       CONCLUSION**

24          Based on the foregoing, Jawbone requests that its motion to dismiss be granted.

25   Dated: September 29, 2014                    MORGAN, LEWIS & BOCKIUS LLP

26                                               By  */s/ Mortimer H. Hartwell*
                                                      _____
27                                                    Mortimer H. Hartwell
                                                      Attorneys for Defendant
28                                                    AliphCom dba Jawbone

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

JAWBONE'S MOTION TO DISMISS
COMPLAINT & MPA IN SUPPORT
CASE NO. 3:14-CV-03587-WHO